UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
REYNALDO CARTAGENA,

                     Petitioner,           <u>MEMORANDUM & ORDER</u>
                                         04-CV-4329 (JS)

      -against-

MICHAEL CORCORAN, Superintendent,
Cayuga Correctional Facility,

                     Respondent.
------------------------------------X
APPEARANCES
For Petitioner:      Robert L. Moore, Esq.
                    Quesada & Moore, LLP
                    128 Avon Place
                    West Hempstead, NY 11552

For Respondent:     Glenn Green, Esq.
                    Suffolk County District Attorney's Office
                    Criminal Courts Building
                    200 Center Drive
                    Riverhead, NY 11901

SEYBERT, District Judge:

<u>INTRODUCTION</u>

        Petitioner Reynaldo Cartagena ("Cartagena" or "Petitioner") seeks a writ of habeas corpus under 28 U.S.C. § 2254. For the reasons below, Cartagena's petition for a writ of habeas corpus is DENIED.

<u>BACKGROUND</u>

I.  <u>Procedural History</u>

        Petitioner was convicted by a jury in the County Court of Suffolk County, on November 3, 1995, of two counts of Kidnapping in the Second Degree and two counts of Robbery in the First Degree. The judgment of conviction was rendered on January 25, 1996.

Petitioner was sentenced as a second felony offender. For the first counts of Kidnapping and Robbery, Petitioner was sentenced to an indeterminate term of imprisonment of nine to 18 years. For the second counts of Kidnapping and Robbery, Petitioner was sentenced to an indeterminate term of imprisonment of nine to 18 years. The two sentences of nine to eighteen years are to run consecutively, for a total sentence of 18 to 36 years.

Cartagena appealed his conviction to the Appellate Division, Second Department. On appeal, Petitioner presented five claims of error: (1) the People failed to prove his guilt beyond a reasonable doubt; (2) the trial court erred when it refused the Petitioner's request to exclude spectators from the courtroom who were wearing allegedly prejudicial clothing; (3) the trial court erred when it allowed the jury to hear a prejudicial and inflammatory question posed by the detective during Petitioner's interrogation, to which Petitioner had not responded; (4) Petitioner's convictions of Kidnapping and Robbery should have been merged; and (5) the sentence imposed was harsh and excessive.

On October 9, 2001, the Appellate Division, Second Department, confirmed the conviction. People v. Cartagena, 287 A.D.2d 515, 731 N.Y.S.2d 469 (2d Dep't 2001). The New York State Court of Appeals denied Petitioner's request for leave to appeal on December 19, 2001. People v. Cartagena, 97 N.Y.2d 680, 764 N.E.2d 399, 738 N.Y.S.2d 295 (2001). Petitioner did not seek a writ of

certiorari from the Supreme Court of the United States.

After the failure of his attorney to submit a timely habeas petition, Petitioner filed a _pro se_ Petition for Writ of Habeas Corpus on October 4, 2004. Petitioner raised the same five grounds for relief that he raised on his direct appeal.

On November 22, 2004, the Court issued an Order directing Petitioner to show cause why his Petition should not be dismissed as time-barred by the one-year limitations period contained in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). See 28 U.S.C. § 2244(d). Petitioner submitted an affidavit on December 3, 2004, alleging that the limitations period should be equitably tolled because his attorney compromised his efforts to file a timely petition. On April 13, 2006, the Court appointed counsel for Petitioner. In June 2007, after Petitioner's first appointed counsel failed to file supplemental papers with the Court and failed to respond to various communications, the Court appointed Petitioner's current counsel. On March 3, 2008, the Court accepted Cartagena's Petition as timely pursuant to 28 U.S.C. § 2244, as amended by the AEDPA.

On May 15, 2008, Petitioner's counsel filed a memorandum in support of the Petition for a writ of habeas corpus, limiting his substantive argument to Petitioner's claim that his Fifth Amendment rights were violated by the inclusion of post-arraignment interrogation into evidence. On May 28, 2008, Respondent filed

3

opposition papers addressing the grounds raised by both Cartagena's
<u>pro</u> <u>se</u> Petition and the memorandum prepared by Petitioner's
counsel.

II.   <u>Factual Background</u>

On February 23, 1994, Petitioner and another male
approached Benjamin Semonella, a traveling salesman for Snap-On
Tools, a company that sells automotive tools and equipment, in Deer
Park, New York.   One of the men pulled out a gun and forced
Semonella into the back of his van.   The men drove the truck with
Semonella in the back for what Semonella believed was about an hour
and a half.   Petitioner and his accomplice(s) ultimately stole the
tools in the back of the van and left Semonella and the van in
Brooklyn, New York.   The New York City Police eventually found the
van and Semonella.

On March 18, 1994, an individual approached Joseph
Montemurro, a traveling salesman for Snap-On Tools, when Montemurro
made a stop at a transmission repair shop in Huntington, New York.
The individual stopped to speak with Montmurro to inquire about a
tool set.   At the same time, Petitioner and an accomplice
approached Montemurro and pushed him to the side of the van.
Petitioner took out a gun and forced Montemurro into the van.
Petitioner forced Montemurro to lay on the floor in the back of the
van while Petitioner stole Montemurro's glasses and $2,500 in cash.
Petitioner tied Monetmurro's hands with Montemurro's belt, and

4

Petitioner and his accomplices drove the van. The van made a few stops, during which merchandise was taken off of the van. At some point, a police officer pulled over the van. The driver indicated that he was a Snap-On employee, but when the officer asked to look inside the van, the driver fled. The driver was ultimately apprehended and identified as Petitioner's cousin, Robert Rivera ("Rivera").

During the investigation of the robberies, Detective Henry Kozen ("Detective Kozen") learned that Petitioner was Rivera's cousin, Petitioner matched the description given by Montemurro and Semonella, and that Petitioner had ties to both Brooklyn and Suffolk County. Detective Kozen assembled a photo spread, which he presented to Montemurro. Montemurro identified Petitioner.

On May 3, 1994, officers brought Petitioner to the police precinct, where he was met by Detective Kozen and Detective Anton Pravetz. Detective Kozen ("Kozen") testified that, after detaining Petitioner for interrogation, he read Petitioner his Miranda rights. Petitioner declined to contact a lawyer. Kozen then informed Petitioner that there would be a lineup that night and that he knew Petitioner was involved in the robbery-kidnappings and that the victims would identify him in the lineup. Kozen urged Petitioner to cooperate and Petitioner responded, saying "I can't snitch, I can't give up the other guys. It wouldn't be right."

(Tr. 2.81.)  Kozen answered "That's because you are the main guy.
The reason you won't give up the other guy is because you are the
main guy."  (<u>Id.</u>)  According to Kozen, Petitioner then made a hand
gesture and no longer wanted to speak.  (<u>Id.</u>)  Both victims then
identified Petitioner in a lineup.

<u>DISCUSSION</u>

Petitioner bases his <u>pro</u> <u>se</u> Petition for a writ of habeas
corpus upon five central grounds.  Petitioner's counsel focuses his
memorandum in support of the Petition on the third ground
originally asserted by Petitioner.  First, Petitioner asserts that
the People failed to prove his guilt beyond a reasonable doubt.
Second, Petitioner argues that the trial court erred when it
refused, at the defense's request, to exclude spectators from the
courtroom who were wearing clothes with clearly visible "Snap-On
Tools" logos.  Third, Petitioner, in his <u>pro</u> <u>se</u> Petition, asserted
that his constitutional right to remain silent was violated when
the trial court allowed the jury to hear Detective Kozen's
question, "That's because you are the main guy.  The reason you
won't give up the other guy is because you are the main guy," and
Petitioner's silence in response to the question.  Petitioner
argues that the question was prejudicial and inflammatory.
However, Petitioner's new counsel further argues that Petitioner's
right to remain silent was violated because his comment, "I can't
snitch" was an invocation of silence and thus Detective Kozen

should have ceased his questioning at that moment. Petitioner argues that the entire colloquy between himself and Detective Kozen was improperly used against him as evidence at trial. Petitioner's fourth argument is that his convictions of kidnapping and robbery as to each incident should merge. Finally, Petitioner argues that the sentence imposed was harsh and excessive.

Respondent argues that none of the foregoing warrant the relief Petitioner seeks, and additionally argues that Petitioner's new argument regarding the "snitch" comment is unexhausted and procedurally barred.

The Court's review of the Petition is governed by the guidelines set forth at 28 U.S.C. § 2254, as amended by the AEDPA, Pub. L. No. 104-132, 110 Stat. 1214. The Court will first address the issue of exhaustion and then proceed to the merits of the instant Petition.

I.   <u>Exhaustion and Procedural Default</u>

One of the most well-known barriers to federal habeas corpus relief is the failure to exhaust claims. The exhaustion doctrine is codified at 28 U.S.C. § 2254 – most specifically subsections (b) and (c). "In general, the exhaustion doctrine provides that a habeas petitioner seeking to upset his state conviction on federal grounds must first have given the state courts a fair opportunity to pass upon his federal claim." <u>Daye v. Attorney General of the State of N.Y.</u>, 696 F.2d 186, 191 (2d Cir.

1982).  The doctrine is based upon principles of comity and serves to ensure that the federal courts do not interfere with state court authority.  Manning v. Artuz, No. 94-CV-3325, 1996 U.S. Dist. LEXIS 22224, at *3 (E.D.N.Y. June 3, 1996) (citing Twitty v. Smith, 614 F.2d 325 (2d Cir. 1979)); see also Rose v. Lundy, 455 U.S. 509, 518, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982).

To exhaust state remedies, a petitioner must:  "(i) present[] the federal constitutional claim asserted in the petition to the highest state court . . . and (ii) inform[] that court of both the factual and legal bases for the federal claim."  DiGuglielmo v. Senkowski, 42 Fed. Appx. 492, 494, 2002 U.S. App. LEXIS 10656 at *6 (2d Cir. 2002) (holding that because petitioner failed to identify any violated federal constitutional provisions in a Leave Application submitted to the state court, the court declined to reach the merits of his claims) (citing Picard v. Connor, 404 U.S. 270, 276-77, (1971); Daye v. Attorney Gen. of the State of N.Y., 696 F.2d 186, 191-92 (2d Cir. 1982) (en banc).  The burden of proving exhaustion lies with the habeas petitioner.  See Colon v. Johnson, 19 F. Supp. 2d 112, 120 (S.D.N.Y. 1998).

Specifically, in proving that the claims have been "fairly presented," the petitioner must show that the federal constitutional claims are the same, both legally and factually, as those brought at each level of state court proceedings.  See id. at 115 (internal citations omitted).  The claim that the petitioner

8

presents to the highest state court must be the "claim that is now the gravamen of his federal habeas corpus petition." <u>Klein</u>, 667 F.2d at 282 (<u>citing</u> <u>Wilson v. Harris</u>, 595 F.2d 101, 102 (2d Cir. 1979)).

If the petitioner has failed to exhaust state remedies, the Court must consider whether the claims should be "deemed exhausted . . . [as] procedurally barred under state law." <u>Ramirez v. Attorney General of the State of New York</u>, 280 F.3d 87, 94 (2d Cir. 2001); <u>Grey v. Hoke</u>, 933 F.2d 117, 120 (2d Cir. 1991). The rationale for deeming procedurally barred claims exhausted is derived from the language of 28 U.S.C. § 2254(b)(1)(A), which provides that "an application . . . shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State." Where a petitioner is procedurally precluded from seeking further review of the claimed error, there are no remedies available in state court that he can exhaust. <u>See</u> <u>Grey</u>, 933 F.2d at 120.

A procedurally defaulted claim will generally be dismissed unless the petitioner can show (1) cause for the default and actual prejudice resulting therefrom or (2) that failure to consider the claim will result in a fundamental miscarriage of justice. <u>See</u> <u>Aparicio v. Artuz</u>, 269 F.3d 78, 90 (2d Cir. 2001). If the petitioner is unable to satisfy this standard, the claims are barred from federal review. <u>See</u> <u>id.</u>

A. <u>Petitioner's Fifth Amendment Claims</u>

Petitioner presents two Fifth Amendment claims. Petitioner's current claim regarding his Fifth Amendment rights has not been exhausted. On direct appeal, and in his <u>pro</u> <u>se</u> Petition, Petitioner claimed that the trial court erred when it allowed the jury to hear a prejudicial and inflammatory question posed by the detective during Petitioner's interrogation.

The following exchange between Detective Kozen and the Prosecutor was introduced during Petitioner's trial,

> Q. Okay. Now, after having the rights read to him, can you explain what happened?
>
> A. At that point I told him, I said, "Rinaldo, we are going to be running two lineups tonight." I said that, "I know you are involved in the robbery-kidnappings of the two Snap-On tool truck drivers and that you are going to be identified." I told him that they spent a lot of time with you. I said that they were completely terrorized by you continuously putting a gun to their head and they will never forget your face.
>
> Q. Did you say anything else to him?
>
> A. Yes. I said, "They described you to a 'T'." I said, "I know they are going to be picking you out." I told him that without some cooperation from you you are going to go to jail forever, and I said, "You don't want that," and continued on. I told him that I know you know the area in Bushwick, Brooklyn where the Snap-On tool truck drivers were left. You have relatives there. I said that the tools were worth a lot of money. At least if we get back some of the tools, it will help you. I said that these other guys are

going to get a free ride. I told him, "If you give up the other guys, it will really help you." I said, "Or else you are going to take all the weight for everything." I said, "You know cooperation is the name of the game." I said, "I won't tell them what you told me," and at that point Mr. Cartagena became very nervous, started to rub his face and he says, "I can't snitch. I can't give up the other guys. It wouldn't be right."

Q.    Now, after he said that [to you], what did you then do?

A.    I told him the reason – I said, "That's because you are the main guy. The reason you won't give up the other guy is because you are the main guy."

Q.    And then what happened after you said that to him?

A.    He just made a hand gesture and didn't want to talk to us anymore.

Q.    And at that time did you ask him if he wanted to take a written statement?

A.    No. I told him that we were going to do lineups.

Q.    And that's because he indicated to you that he was done talking to you?

A.    Yes.

MR. KEAHON: Could we please not testify for the witness. I object.

THE COURT: Sustained.

Q.    Were any other efforts made to talk to the defendant after he made a gesture to you that he didn't want to speak to you?

A.    Yes. Later on that evening I tried to

talk to the defendant again and he didn't
                    want to talk to me.

          Q.    So, there was no other statements made by
                the defendant?

          A.    No, sir.

(Tr. 80-82).

          In his direct appeal and his original pro se application,

Petitioner argued that the trial Court infringed Petitioner's Fifth

Amendment right by allowing the jury to hear Detective Kozen's

question, "[t]hat's because you are the main guy.  The reason you

won't give up the other guy is because you are the main guy,"[1] and

Petitioner's silence in response to the question.

          However, Petitioner's counsel currently makes an

additional argument that Petitioner did not raise on appeal or in

his original petition.  Petitioner now argues that statement, "I

can't snitch, I can't give up the other guys.  It wouldn't be

right," was an invocation of his Fifth Amendment right to remain

silent, and Detective Kozen was thus foreclosed from questioning

Petitioner any further.  Petitioner now maintains that the entire

colloquy, including the "snitch" remark, should not have been

introduced to the jury.  This argument is new and independent of

_____

          [1] Petitioner's brief on direct appeal alleged that Detective
Kozen asked Petitioner: "The reason you won't give up the other
guy is because you are the main guy?" (Appellant's Br. p. 24
(citing Tr. 81)).  However, in the trial transcript, the
same line is phrased as a statement, not a question: "The reason you
won't give up the other guy is because you are the main guy."
(Tr. 81).

Petitioner's original argument, which was limited to the Detective's statement that Petitioner was the "main guy" and Petitioner's silence in response thereto.

Petitioner did not raise his argument regarding the "snitch testimony" during his trial. In fact, during the trial, Petitioner's counsel conceded the admissibility of the "snitch" testimony, stating, "[t]hen I believe their response is, my client's alleged response is, 'I can't do it. I can't snitch on anybody.' That is basically what I think is proper to be introduced." (T2. 49; see also 61-62).

Petitioner's new "snitch" claim is unexhausted. Petitioner did not raise this argument on direct appeal, and has not filed any state habeas petitions pursuant to Section 440.10 of the New York Criminal Procedure Law. Therefore, this claim has not been presented to the state courts.

Petitioner's "snitch" claim is also procedurally defective. Under New York law, Petitioner was entitled to one appeal, and one appeal only. See Aparicio, 269 F.3d at 91 (citing N.Y. Crim. Proc. Law § 450.10(1)); see also Gibson v. Phillips, 263 F. App'x 78, 80, No. 06-3252-pr, 2008 U.S. App. LEXIS 2439 (Feb. 4, 2008) (holding that a petitioner was "procedurally barred from pursuing his Miranda claim in federal court because he did not 'fairly present' it in one complete round of a state-court appellate review process"). Cartagena appealed his Fifth Amendment

argument.  However, by neglecting to present his argument regarding the "snitch" remark, Petitioner lost the opportunity to ever bring such an argument again.  Petitioner may not bring a 440 motion to vacate judgment because he failed to bring the current factual claim on direct appeal.

Because this habeas petition contains both exhausted and unexhausted claims, the Court is faced with what is known as a mixed petition - a petition containing both exhausted and unexhausted claims.  Typically, mixed petitions must be dismissed, allowing petitioners to return to state court to exhaust all unexhausted claims.  <u>See</u> <u>Rose</u>, 455 U.S. at 510; <u>Maisonet v. Conway</u>, No. 04-CV-2860, 2007 U.S. Dist. LEXIS 49648, at *14 (E.D.N.Y. July 10, 2007).  However, "pursuant to the Supreme Court's ruling in <u>Coleman v. Thompson</u>, where it is clear that a claim before a federal court is procedurally barred in state court, it would be wasteful of judicial resources to require the Petitioner to return to state court and argue the claim when the outcome is a foregone conclusion." <u>Maisonet</u>, 2007 LEXIS 49648, at *14 (<u>citing</u> <u>Coleman</u>, 501 U.S. at 734 n.1).  Petitioner's "snitch" claim is now procedurally barred because Petitioner failed to raise this argument on direct appeal.  Petitioner therefore cannot raise this claim for the first time in a collateral attack pursuant to C.P.L. 440.  <u>See</u> N.Y. C.P.L. 440.10(2)(c).  The facts underlying Petitioner's new claim are apparent from the record and could have

been raised on direct appeal. Petitioner has no further remedies available in state court; thus, "[n]o purpose would be served by requiring petitioner to return to state court for further proceedings before considering any of the claims raised in his habeas petition." <u>Grey</u>, at 120. Petitioner's new claim must be deemed exhausted and procedurally barred. <u>See</u> <u>Zimmerman v. Burge</u>, 492 F. Supp 2d 170, 189 ("Since petitioner's claim . . . could have been raised on direct review but was not, it is deemed exhausted and procedurally barred.").

This Court may not review Cartagena's claim, therefore, "'unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.'" <u>Bartley</u>, 2004 U.S. Dist. LEXIS 12755, at *38 (<u>quoting</u> <u>Coleman v. Thompson</u>, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991)). Petitioner proffers no reason why he failed to present this argument, and any potential arguments would require a great deal of inference on the part of the Court. This Court refuses to make such inferences. Moreover, Petitioner does not present an argument for a "fundamental miscarriage of justice." Consequently, the Court is precluded from reviewing Petitioner's "snitch" claim. However, Petitioner's original Fifth Amendment argument - that Detective Kozen posed a "prejudicial and inflammatory" question - <u>has</u> been

exhausted and this Court will examine its merits below.

II.  <u>Standard of Review</u>

The Antiterrorism and Effective Death Penalty Act governs the appropriate standard in determining federal habeas relief. <u>Montalvo v. Annetts</u>, No. 02-CV-1056, 2003 U.S. Dist. LEXIS 22619 at *34 (S.D.N.Y. Dec. 17, 2003); <u>Davis v. Keans</u>, No. 99-CV-0071, 2001 U.S. Dist. LEXIS 57, at *2-3 (E.D.N.Y. Jan 4, 2001).  A petitioner seeking federal review of his conviction must adhere to a stringent review standard.  <u>Montalvo</u>, 2003 U.S. Dist. LEXIS 22619, at *34. To prevail, a petitioner must demonstrate an adjudication on the merits; that is, (1) that the state court adjudication resulted in a decision that was "contrary to, or involved an unreasonable application of, clearly established" federal law established by Supreme Court precedent; or (2) the state court based its decision upon an "unreasonable determination of the facts in light of the evidence presented in the State court proceedings.  <u>Id.</u>  (<u>citing</u> 28 U.S.C. § 2254(d)(1)-(2);  <u>see also</u> <u>Willet v. Berbary</u>, 456 F. Supp. 2d 404, 407 (W.D.N.Y. 2006).

"The 'contrary to' and 'unreasonable application' clauses of § 2254(d)(1) have 'independent meaning.'"  <u>Montalvo</u>, 2003 U.S. Dist. LEXIS 22619, at *34 (<u>quoting</u> <u>Williams v. Taylor</u>, 529 U.S. 362, 404-05, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000)).  A state court decision is "contrary to" Supreme Court precedent if the state court decision (1) "'applies a rule that contradicts the

16

governing law set forth in [Supreme Court] cases,' or if it (2) 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'" Mitchell v. Esparza, 540 U.S. 12, 15, 124 S. Ct. 7, 157 L. Ed. 2d 263 (2003) (quoting Williams, 529 U.S. at 405-06). This standard does not require state court citation of a Supreme Court decision, nor does the state court even need to be aware of Supreme Court precedents, "so long as neither the reasoning nor the result of the state-court decision contradicts them." Mitchell, 540 U.S. at 15 (internal quotation marks and citations omitted).

A decision is an "unreasonable application" of clearly established Supreme Court precedent if "the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of petitioner's case." Wiggins v. Smith, 539 U.S. 510, 520-21, 123 S. Ct. 2527, 156 L. Ed. 2d 471 (2003) (internal quotation marks and citations omitted). The Supreme Court has held "unreasonable" to mean "objectively unreasonable" rather than an incorrect application of the law. Id. (citing Williams, 529 U.S. at 409-10). While "some increment of incorrectness beyond error is required . . . the increment need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Mask v. McGinnis, 252

F.3d 85, 89 (2d. Cir. 2001) (internal quotation marks and citations omitted) (alteration in original).  Accordingly, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 411.  It is with this deferential standard in mind that the Court now turns to the merits of Petitioner's case.

III.  Petitioner's Remaining Claims

There are five claims remaining: (1) violation of the Fifth Amendment; (2) the trial court failed to prove Petitioner's guilt beyond a reasonable doubt; (3) the trial court failed to exclude spectators wearing prejudicial clothing from the courtroom; (4) the merger doctrine should apply to Petitioner's conviction; and (5) Petitioner's sentence is allegedly harsh and excessive.

A.    Fifth Amendment Violation

Petitioner's remaining Fifth Amendment claim is that the trial court erred when it allowed the jury to hear a prejudicial and inflammatory question posed by Detective Kozen during Petitioner's interrogation.  At trial, Detective Kozen testified that, after being read his Miranda rights, Petitioner stated that he would not snitch on the other guys.  Detective Kozen testified that he responded to Petitioner, "that's because you are the main guy.  The reason you won't give up the other guy is because you are

the main guy?" Kozen testified that, after he made this statement to Petitioner, Petitioner "just made a hand gesture and didn't want to talk . . . anymore."

Petitioner's argument that this testimony impermissibly burdened his right to remain silent does not rise to the level of a constitutional claim. "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." <u>Estelle v. McGuire</u>, 502 U.S. 62, 68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991). "Thus, a habeas petitioner must demonstrate that the allegedly-erroneous state court evidentiary rulings violated an identifiable constitutional right." <u>Jamison v. Grier</u>, No. 01-CV-6678, 2002 U.S. Dist. LEXIS 1160. at *49 (S.D.N.Y. Jan. 25, 2002). The Court must first determine whether the state court violated a state evidentiary rule, "because the proper application of a presumptively constitutional state evidentiary rule could not be unconstitutional." <u>Id.</u> (<u>citing</u> <u>Brooks v. Artuz</u>, No. 97-CV-3300, 2000 U.S. Dist. LEXIS 15070, at *26 (S.D.N.Y. Oct. 9, 2000) (petitioner did not demonstrate an error under state evidentiary law, "much less" an error of constitutional magnitude); <u>Jones v. Stinson</u>, 94 F. Supp. 2d at 391-92 (once the federal court has found that the state court ruling was not erroneous under state law, there is no need to apply a constitutional analysis). "Even an incorrect state court evidentiary ruling does not rise to the level

of constitutional error necessary to warrant habeas relief, unless the error deprived Petitioner of a fundamentally fair trial." Alfini v. Lord, 245 F. Supp. 2d 493, 499 (citing McLean v. McGinnis, 29 F. Supp. 2d 83, 93 (E.D.N.Y. 1998). Here, the state court ruled that the jury could hear the Detective's question, and as such, that the question was not unduly prejudicial as Petitioner claims. The Court finds that the trial court properly applied a state evidentiary rule, and Petitioner has not shown that the application of this evidentiary rule violated Petitioner's rights.

Moreover, even if the admission did constitute a constitutional error, the Court need not grant habeas relief unless the error "had substantial and injurious effect or influence in determining the jury's verdict." Brecht v. Abrahamson, 507 U.S. 619, 637-38, 113 S. Ct. 1710, 123 L. Ed. 2d 353 (1993). In arguing that the alleged constitutional error cannot be deemed harmless beyond a reasonable doubt,[2] Petitioner cites the numerous discrepancies he believes existed at trial. However, this is the same argument Petitioner presents under his insufficiency of evidence claim. The Court rejects Petitioner's argument, and finds

---

[2] Petitioner incorrectly argues that the standard for error is "harmless beyond a reasonable doubt" according to Chapman v. California, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). The Supreme Court has established that the correct standard is an "error is harmless unless it had substantial and injurious effect or influence in determining the jury's verdict." Fry v. Pliler, 1551 U.S. 112, 116, 27 S. Ct. 2321, 168 L. Ed. 2d 16 (2007) (internal quotation marks omitted).

that to the extent any error occurred, such error did not have a substantial and injurious effect or influence in determining the jury's verdict. The Court examines the substance of Petitioner's claims regarding the sufficiency of the evidence at trial in more detail below.

B.   Proof Beyond a Reasonable Doubt

Petitioner argues that the prosecution failed to establish Petitioner's guilt beyond a reasonable doubt due to a lack of sufficient evidence. "Petitioner bears a 'very heavy burden' in attempting to obtain a writ of habeas corpus based upon an 'insufficiency of the evidence claim.'" Hernandez v. Conway, 485 F. Supp. 2d 266, 281 (W.D.N.Y. 2007) (quoting United States v. Carson, 702 F.2d 351, 361 (2d Cir. 1983). The Supreme Court has established that a habeas court must not inquire whether it believes the evidence proved guilt beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 318-19, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (citing Woodby v. INS, 385 U.S. 276, 282, 87 S. Ct. 483, 17 L. Ed. 2d 362 (1966)). Instead, the court must inquire whether, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319 (citing Johnson v. Louisiana, 406 U.S. 356, 362, 92 S. Ct. 1620, 32 L. Ed. 2d 152).

At trial, each victim testified that Petitioner was his

21

captor. Prior to trial, both victims identified Petitioner in a line-up. Any discrepancies as to the victims' original descriptions of their abductor were clarified during defense counsel's cross-examination. Moreover, Petitioner has ties to Suffolk County, where both kidnappings originated, and Brooklyn, where both robberies and kidnappings culminated. Furthermore, the accomplice arrested at the scene of the crime was Petitioner's cousin. Viewing the evidence in a light most favorable to the prosecution, this court determines that a reasonable jury could have found that Petitioner is guilty of robbery in the first degree and kidnapping in the second degree. Thus, Petitioner's claim of insufficiency of evidence is DENIED.

C. Exclusion of Spectators Wearing Prejudicial Clothing

Petitioner claims that the trial court denied his right to a fair trial when it refused to grant defense counsel's request to exclude spectators from the courtroom who were wearing Snap-On Tools logos on their clothing. On appeal, the Appellate Division rejected Petitioner's argument.

To succeed on this claim, Petitioner must show that the state court's decision to allow the spectators was "contrary to" or "an unreasonable application of" the Supreme Court's holdings. Carey v. Musladin, 549 U.S. 70, 72, 127 S. Ct. 649, 166 L. Ed. 2d 482 (citing 28 U.S.C. § 2254(d)(1)). The Court finds that the state court's decision was not contrary to or an unreasonable

application of clearly established federal law.

In <u>Carey</u>, the Supreme Court considered whether a state court's decision was contrary to clearly established law when the state court held that "buttons displaying the victim's image worn by the victim's family during respondent's trial did not deny respondent his right to a fair trial" <u>Id.</u> at 77.  The Supreme Court concluded that it was not because "the effect on a defendant's fair-trial rights of the spectator conduct to which [the defendant] objects is an open question in our jurisprudence." <u>Carey</u>, 549 U.S. at 76.  Although the Supreme Court has provided a test for prejudice applicable to state conduct, it "has never addressed a claim that . . . private-actor courtroom conduct was so inherently prejudicial that it deprived a defendant of a fair trial." <u>Id.</u>  Similarly, "[g]iven the lack of holdings from [the Supreme] Court regarding the potentially prejudicial effect of spectators' courtroom conduct of the kind involved here," the state court's decision cannot have been contrary to or an unreasonable application of the Supreme Court's holdings.  <u>Id.</u> at 77.

D.  <u>Merger Doctrine</u>

Petitioner contends that his kidnapping charges should have been merged with his robbery charges.  However, Petitioner's interpretation of the merger doctrine is flawed.  "The merger doctrine was not designed to merge true kidnappings into other crimes merely because the kidnappings were used to accomplish

23

ultimate crimes of lesser or equal or greater gravity.  Only if the conduct underlying the abduction was incidental to and inseparable from another crime, will the doctrine apply." People v. Smith, 390 N.E.2d 291, 293, 47 N.Y.2d 83, 87 (1979) (citation omitted).  The merger doctrine was not created to preclude convictions for separate crimes merely because they were committed together.  See People v. Armstrong, 673 N.Y.S.2d 154, 155, 250 A.D.2d 618 (App. Div. 2d Dep't 1998) (holding that the merger doctrine is inapplicable where the elements of a kidnapping were completed before the acts of the underlying robbery took place and the confinement continued past the completion of the acts underlying the robbery counts,); People v. Steel, 207 A.D.2d 744, 616 N.Y.S.2d 623 (App. Div. 1st Dep't 1994) (holding that kidnapping does not merge into robbery when the robbery is not incidental to the abduction of the victim).

Petitioner's crimes of kidnapping in the second degree were discrete and independent of his crimes of robbery in the first degree.  On two separate occasions, Petitioner kidnapped a tool salesman at gunpoint, threatened him, restrained him in his truck for approximately four hours, and then robbed the truck of its contents.  On both occasions, the confinements continued past the consummation of the robberies.  During both abductions, the restraint of the victims was not a minimal intrusion necessary and integral to the robberies.  Therefore, as the Appellate Division

correctly determined, the merger doctrine is inapplicable and Petitioner's claim is DENIED on this ground.

     E.   <u>Harsh and Excessive Punishment</u>

It is well-established that an excessive sentence claim will not prevail as a ground for habeas corpus relief if the imposed sentence was within the limits prescribed by state law. <u>White v. Keane</u>, 969 F.2d 1381, 1383 (2d Cir. 1992). When a state prisoner's sentence falls within the range authorized by New York Penal Law, it "does not qualify for consideration as excessive under the Eighth Amendment," and therefore, does not raise a federal constitutional issue to warrant habeas corpus relief. <u>Richardson v. Artuz</u>, No. 97-CV-2128, 2004 U.S. Dist. LEXIS 4509, at *63 (E.D.N.Y. Mar. 22, 2004). Petitioner was sentenced to an indeterminate term of imprisonment of nine to 18 years, to run consecutively with a second indeterminate term of imprisonment of nine to 18 years for a total sentence of 18 to 36 years. Petitioner argues that the sentence imposed should be modified in the interest of justice and should take into consideration the possibility of rehabilitation of Petitioner as a responsible member of society.

The sentence does not exceed the legal range for Petitioner's convictions. Petitioner was sentenced as a persistent felony offender, and received a sentence within the guidelines of the New York Penal Law. Section 70.10 of the Penal Law authorizes

the court to sentence a persistent felony offender according to the guidelines for a class A-1 felony "when it is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct indicate that extended incarceration and life-time supervision will best serve the public interest." N.Y.P.L. 70.10(2). As indicated in the sentencing minutes, the sentencing court took into account Petitioner's extensive criminal history, the terrorizing nature of the crimes, and the psychological impact on the victims. (Sentencing Mins. 55-57). Because Petitioner is a persistent felony offender, a sentence of 18 to 36 years is proper for a conviction of two counts of Kidnapping in the Second Degree and two counts of Robbery in the First Degree. See N.Y.P.L. §§ 70.00 et seq. Therefore, habeas relief is DENIED on this ground.

IV.   <u>A Certificate of Appealability is Denied</u>

The Court will not issue a certificate of appealability in this case. Petitioner has not made a substantial showing of the denial of a constitutional right. See 28 U.S.C § 2253. The issues involved in this case are not debatable among reasonable jurors, a court could not resolve the issues in a different manner, and the questions involved do not deserve encouragement to proceed further. See <u>Lucidore v. N.Y. State Div. of Parole</u>, 209 F.3d 107, 112 (2d Cir. 2000)

<u>CONCLUSION</u>

For the reasons stated above, the Court DENIES Petitioner's writ of habeas corpus in its entirety. The Court will not issue a certificate of appealability. The Clerk of the Court is directed to mark this matter as CLOSED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    Central Islip, New York
          May  19 , 2009